CAROLINE E. JUNGER, Appellee, v. SOLDIER VALLEY SAVINGS BANK OF SOLDIER et al., Appellants.

No. 39556.

FEBRUARY 5, 1929.

*Underhill & Miller,* for appellants.

*Prichard & Prichard,* for appellee.

FAVILLE, J.—Appellant and appellee are husband and wife. They were married in December, 1903, and have five children, two of whom are living with the appellee. Appellant is a physician, engaged in the practice of his profession at the town of Soldier. The appellee resides at Onawa.

It is the contention of the appellee that, within a month or two after the parties were married, they entered into an oral agreement that appellee was to assist the appellant in connection with his business, and that, whenever there were any savings out of his business, they should be divided in such a manner that she would receive $500 and the appellant $500. Appellee had no separate business of her own. The appellant was evidently successful in his business, and accumulated a considerable amount of property. It is the appellee's contention that certain property in the form of bonds, certificates of deposit, and other forms of indebtedness, stood in her name, and belonged to her, and that the appellant has converted the same, and that she is entitled to an accounting therefor. The parties had a safety-deposit box in the defendant bank, in which securities were placed. Both parties had keys to said box. The appellant is president of the bank. A large amount of securities in the way of stocks, certificates of deposit, and other evidence of indebtedness, was in the name of the appellee. The appellant contends that all of said property belonged to him, and that it was placed in the name of the appellee solely "as a matter of business." Appellant's explanation is that he was fearful that he might sometime be sued for mal-

practice in his profession, having had one experience of that kind, and that he placed his property in his wife's name, to avoid possible complications in the event of such a suit. The wife, on the other hand, contends that she had the oral agreement referred to with her husband, by which she was to have half of the profits of the business as her own and in her own right, and that the securities which stood in her name were her own individual property, and that these have been converted by the appellant.

I. It appears from the testimony that $15,000 had been invested in the stock of the American Life Insurance Company in the name of the appellee. This stock was sold in August of 1921.  It appears that the check for the proceeds of the sale of said stock, amounting to $15,000, was sent by mail from Des Moines on or about August 16, 1921, in a letter addressed to the appellee. It is the contention of the appellee that she deposited said check in the defendant bank when she received it, and that, at the time, she gave the cashier of the bank instructions to invest it for her. She testified:

"I don't know whether he did or not. He never turned over any notes to me, and I never got any proceeds for any notes, or anything like that."

The deposit slip issued by the cashier of said bank for the deposit of the said $15,000 was offered in evidence, and shows that said sum was deposited for the credit of the *appellee.* The appellee had no pass book. The books of the bank were produced, and the ledger account showed that the credit of $15,000 was placed in the *appellant's* account. An officer of the bank testified that there was no record that any portion of the $15,000 shown by the deposit slip had ever been paid to the appellee or returned to her. The books of the bank showed that the $15,000 was deposited in the appellant's account, and that usually checks were drawn on that account by both appellant and appellee; but whether the appellee drew any portion of the $15,000 does not appear. Appellee testified that she did not authorize the bank to deposit said $15,000 in the joint account of said parties or in the account of the appellant. The record does show that, after the deposit of the said $15,000 in the account of the appellant, the first check drawn thereon was for $2.10; then followed six

checks amounting to $714.79; and the seventh check was for $14,855.81. This check was drawn August 23, 1921, five days after the deposit of the $15,000. The sum of $752.28 was in the account prior to the deposit of the $15,000. The bank officers produced data tending to show that the $14,855.81 that was withdrawn from the account was invested in ten notes. A debit slip was attached to the list. There is no definite showing as to what became of said notes. The appellee testified that she had never heard of the purchase of said notes until it was testified to on the trial. The appellant testified that he bought the stock in the insurance company and paid for it, and that it was his own money that was invested in it. He testified that he attended to the sale of the insurance stock for $15,000, and that he knew of the investment of the proceeds in the purchase of notes. He contends that he told the appellee that the purchase of said notes was made with said money. It does not appear what became of the notes in which the said proceeds were invested, but from the entire record it satisfactorily appears that the appellee did not receive the proceeds of the same. The trial court awarded the appellee the said sum of $15,000, with interest thereon from the date the same was deposited, on or about August 16, 1921. Of this the appellant makes complaint.

We do not deem it necessary to determine the question as to whether or not an oral contract existed between the parties for the division of the earnings of the appellant in the practice of his profession, or whether such contract, if entered into, would be legal. One thing does satisfactorily appear from the record, and that is that the appellee was the owner of stock in the American Life Insurance Company of the value of $15,000. Whether the original purchase price for said shares of stock was furnished by the appellee or not is not material to the question of her ownership. The title to said stock was vested in her. If it was a completed gift from the appellant to the appellee, the title and ownership would be perfect in her. If it was a completed gift, the appellant could not recall it, except by the consent of the appellee, and no such consent appears of record. If it was in her name because of a fraudulent purpose on the part of the appellant, the court would leave the parties where it found them. The title to the stock and to the proceeds thereof was in the appellee. She deposited the draft for $15,000 in the bank,

and received the deposit slip therefor in her own name. We think that it satisfactorily appears from the record that the appellant did receive the proceeds of the said $15,000 in the form of notes. It does not appear that the appellee consented to this arrangement. We reach the conclusion, under the record, that the appellee was the owner in her own right of the proceeds of the $15,000 in question, and that the appellant did convert the same to his own use, and has not accounted to the appellee therefor. The conclusion of the trial court is supported by the record in the case, and we are disposed to acquiesce therein.

II. Appellee claims that she is entitled to judgment against the appellant for the further sum of $11,500 and interest. It is the contention of the appellee that she examined certificates of  deposit that were kept in the safety box used by the parties, and that at one time she discovered certificates of deposit in said box in her name in the sum of $11,500. She testified that these certificates aggregating $11,500 were payable to her, and were issued at different times; that they were left in the safety-deposit box; that she left the matter with the bank officials in regard to the renewal of said certificates. Appellee testified that the last record she has of time certificates was March 1, 1922, and that said certificates then aggregated $11,500; that they were in her name, and bore 5 per cent interest. There is no sufficient evidence in the record from which we can determine what became of the proceeds of said certificates of deposit, or trace them in any specific manner. The general course of dealing was evidently one where certificates of deposit were sometimes cashed and carried into the joint open checking account, and from time to time, the checking account was transferred into certificates of deposit. It does not appear in the record from what source said certificates which the appellee says she found in the safety box were derived. Nor does it sufficiently appear from the record in what manner or by what means they were disposed of. The record is not sufficient to support the appellee's claim of a conversion of said certificates by the appellant, and we would not be warranted in entering judgment against him therefor.

III. A large amount of evidence was introduced with regard to the various transactions of these parties and the property now owned by each and many other matters. We have read the

record with care. We fail to find therefrom that the appellee has established her right to recover judgment against the appellant for any other or different sum than the amount awarded her by the trial court.

IV. The court awarded judgment against the defendant bank for the sum of $139.43, which was the amount on deposit in said bank to the account of the appellee at the time the action was instituted. This amount, however, was afterward checked out, and the inclusion of judgment therefor in the decree was obviously an oversight on the part of the trial court. The decree must be modified to the extent of eliminating judgment in behalf of the appellee and against the said bank for said sum. In all other respects, the decree is affirmed. The costs in this court will be taxed one half thereof to the appellant and one half thereof to the appellee. No costs will be taxed to the bank. It is so ordered.—*Modified and affirmed.*

ALBERT, C. J., and EVANS, KINDIG, and WAGNER, JJ., concur.